**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| CARLI D. KING, | Case No. 1:16-cv-1107 |
|---|---|
| Plaintiff, | Barrett, J. |
| | Bowman, M.J. |
| v. | |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

**REPORT AND RECOMMENDATION**

Plaintiff Carli King filed this Social Security appeal in order to challenge the Defendant's finding that she is not disabled. *See* 42 U.S.C. §405(g). Proceeding through counsel, Plaintiff argues that the ALJ erred both by improperly evaluating the medical opinion evidence, and by finding her to be not fully credible. As explained below, I conclude that the ALJ's finding of non-disability should be REVERSED, because the finding reflects legal error and is not supported by substantial evidence in the record as a whole.

**I. Summary of Administrative Record**

On September 17, 2013, Plaintiff filed an application for Supplemental Security Income ("SSI"), alleging disability beginning on January 31, 2010, based upon several severe mental health impairments.[1] After her claim was denied initially and upon reconsideration, Plaintiff requested an evidentiary hearing before an ALJ. On November 18, 2015, she appeared with counsel and gave testimony before ALJ Mark

---

[1] A claimant cannot be awarded SSI benefits prior to the month of her application, but all evidence from the alleged disability onset date was considered by the ALJ.

1

Hockensmith; a vocational expert also testified. (Tr. 36-70). On December 9, 2015, the ALJ issued an adverse written decision, concluding that Plaintiff is not disabled. (Tr. 20-29).

Plaintiff was 32 years old at the time of the ALJ's decision, an age that is considered to be a younger individual under social security regulations. She has a limited ninth grade education. She has four children, none of whom live with her, apparently because of her mental impairments. She lives in a home with her sister, her brother-in-law, and their three children. She has a limited work history, with no past relevant work.

The ALJ determined that Plaintiff has severe impairments of bipolar disorder, posttraumatic stress disorder ("PTSD"), and a panic disorder. (Tr. 22). In addition, the ALJ noted non-severe impairments of chronic joint pain and gastro esophageal reflux disease. (Tr. 22). However, none of Plaintiff's impairments, either alone or in combination, meet or medically equal any Listing in 20 C.F.R. Part 404, Subpart P, Appendix 1, such that Plaintiff would be entitled to a presumption of disability. (Tr. 23).

Instead, the ALJ found that Plaintiff retains the residual functional capacity ("RFC") to perform a full range of work at all exertional levels, subject to the following non-exertional limitations relating to her mental impairments:

> (1) work should consist of simple, routine tasks; (2) in a static work environment with few changes in routine; (3) no fast paced work or strict production quotas; (4) no contact with the public; (5) occasional contact with coworkers and supervisors; and (6) no tandem or collaborative work.

(Tr. 24). Considering Plaintiff's age, education, work experience and RFC, and based on testimony from the vocational expert, the ALJ determined that Plaintiff could still perform a significant number of jobs in the national economy, including the representative jobs of laundry worker, inspector/Hand Packager, and Injection Molding

Machine Tender. (Tr. 28). Therefore, the ALJ determined that Plaintiff was not under a disability. The Appeals Council denied further review, leaving the ALJ's decision as the final decision of the Commissioner.

In her appeal to this Court, Plaintiff primarily argues that the ALJ erred in weighing the medical opinion evidence, and in improperly assessing her credibility. Although I find no reversible error in the ALJ's rejection of the opinions rendered by Plaintiff's treating physician or assessment of Plaintiff's credibility, I nevertheless recommend reversal based upon a separate legal error evident in the ALJ's failure to adequately discuss evidence of Plaintiff's level of impairment in her more recent records, and in the ALJ's failure to discuss the consulting physicians' lack of access to those records.

## II. Analysis

### A. Judicial Standard of Review

To be eligible for benefits, a claimant must be under a "disability." *See* 42 U.S.C. §1382c(a). Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986).

When a court is asked to review the Commissioner's denial of benefits, the court's first inquiry is to determine whether the ALJ's non-disability finding is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (additional citation and internal

3

quotation omitted). In conducting this review, the court should consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence supports the ALJ's denial of benefits, then that finding must be affirmed, even if substantial evidence also exists in the record to support a finding of disability. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion.... The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts. If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

*Id.* (citations omitted).

In considering an application for supplemental security income or for disability benefits, the Social Security Agency is guided by the following sequential benefits analysis: at Step 1, the Commissioner asks if the claimant is still performing substantial gainful activity; at Step 2, the Commissioner determines if one or more of the claimant's impairments are "severe;" at Step 3, the Commissioner analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at Step 4, the Commissioner determines whether or not the claimant can still perform his or her past relevant work; and finally, at Step 5, if it is established that claimant can no longer perform his or her past relevant work, the burden of proof shifts to the agency to determine whether a significant number of other jobs which the claimant can perform exist in the national economy. *See Combs v. Commissioner of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); 20 C.F.R. §§404.1520, 416.920.

A plaintiff bears the ultimate burden to prove by sufficient evidence that she is entitled to disability benefits. 20 C.F.R. § 404.1512(a). A claimant seeking benefits must present sufficient evidence to show that, during the relevant time period, she

4

suffered an impairment, or combination of impairments, expected to last at least twelve months, that left him unable to perform any job. 42 U.S.C. § 423(d)(1)(A).

   B.  **Plaintiff's Claims of Error**

   **1. Evaluation of Plaintiff's Credibility[2]**

One of Plaintiff's primary arguments is that the ALJ committed reversible error when he determined that her testimony concerning the intensity, persistence, and limiting effects of her mental and physical symptoms were "not entirely credible." (Tr. 26). An ALJ's credibility assessment must be supported by substantial evidence, but "an ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." *Walters v. Com'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997). Further, a credibility determination cannot be disturbed "absent a compelling reason." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001). Thus, it is proper for an ALJ to discount the claimant's testimony where there are contradictions among the medical records, her testimony, and other evidence. *Warner v. Com'r of Soc. Sec.*, 375 F.3d at 387, 392 (6th Cir. 2004). Observing Plaintiff's demeanor and evaluating her testimony in this case, the ALJ specifically found it to be "not fully consistent with the medical signs and laboratory findings and other information provided by medical sources, including the longitudinal medical record, to a degree that supports a finding of disability." (Tr. 27).

As support for the adverse credibility finding, the ALJ referenced many findings that undermined Plaintiff's subjective complaints. For example, Plaintiff testified to

---

[2]Although presented as Plaintiff's second claim of error, the undersigned addresses this claim first for the convenience of the Court.

5

physical limitations that were not supported by the record, including a claim that she could stand for only three hours, and can walk for not more than an hour. (Tr. 47). She also testified to tingling in her hands and trouble grasping (Tr. 48), as well as pain in every joint that would prevent her from working. (*See* Tr. 25). However, the ALJ found no evidence to support "severe" physical impairments of any kind, and that Plaintiff continued to possess the physical capacity to perform work at every exertional level. Although Plaintiff does not appeal those findings in this Court, they are still relevant to the overall assessment of credibility. (*See also generally* Tr. 414-420, physical assessment by Phillip Swedberg, M.D.)

Just as he found Plaintiff's testimony not to be credible concerning her physical limitations, the ALJ found Plaintiff's testimony concerning her mental limitations to be not fully credible. The ALJ determined that although Plaintiff has sought psychiatric treatment and been prescribed medications for her severe psychiatric disorders for a number of years, that treatment has been effective in controlling her symptoms to a non-disabling level except for periods when she has failed to comply with prescribed treatment. (Tr. 26).

> [S]he has had periods of noncompliance with both her medication and treatment.
>
> In August 2014 and September 2015, the claimant was hospitalized after not taking her psychiatric medications, specifically Xanax…. She admitted that she intentionally stopped taking the medications in June 2014 and that in September 2015 she did not take them because she was incarcerated. It is noted that the claimant has a history of felony convictions including possession of cocaine, for which she is currently on probation, and has had other legal problems regarding charges of theft and forgery.

(Tr. 26). Plaintiff testified at the hearing that she stopped taking her medications based upon a fear she would become addicted, especially to Xanax, (Tr. 57), but told Dr.

Rosenthal that she was unsure why she stopped taking her medications, suggesting it could have been due to forgetfulness. (Tr. 375).

The lack of medical support for any of her alleged physical limitations, Plaintiff's noncompliance with treatment, her prior drug offenses, and history of theft and forgery offenses were not the only factors impacting her credibility. The ALJ also pointed out discrepancies in Plaintiff's testimony concerning her very limited work history, and the reasons that she does not work.

> The claimant testified that she last worked at Kohl's but was fired for missing too much work and that she has issues with crying outbursts and trouble dealing with people. However, she told consultative examiner, James Rosenthal, Ph.D., in January 2014 that she stopped working because "I just didn't feel like I needed the money so I wouldn't go in." …She did not recall ever being fired. She further stated that she usually quits a job after a week because, "I didn't feel like I had to work. I didn't need the money. Sometimes I also was anxious at work and I didn't want to be around people." She said she got along okay with bosses, "until they would tell me what to do…."

(*Id.*)

Plaintiff argues in her reply memorandum that her failure to comply with prescribed mental health treatment should not have been considered by the ALJ in making an adverse credibility assessment, because the Sixth Circuit has recognized that when it comes to mental health disorders, there are times when the "very failure to seek treatment is simply another symptom of the disorder itself." *White v. Com'r of Soc. Sec.*, 572 F.3d 272, 283-284 (6th Cir. 2009); *see also Blankenship v. Bowen*, 874 F.2d 1116, 1124 (6th Cir. 1989) (holding that a failure to seek medical care "should not be a determinative factor in a credibility assessment," and suggesting it is "questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation.")

If the credibility issue stood alone, the undersigned would find no reversible error,

in part because the ALJ did not rely solely on Plaintiff's failure to comply with her prescribed mental health treatment for the adverse credibility finding, but cited a number of factors. Moreover, the Sixth Circuit has never wholly prohibited consideration of non-compliance with mental health treatment in a credibility assessment. Rather, the case law supports a holistic review of the evidence. In *White*, for example, the Sixth Circuit affirmed as "reasonable" the ALJ's determination that the Plaintiff's withdrawal from mental health treatment for a six-month period supported a finding that her symptoms were less severe during that period of time. *Id.*, 572 F.3d at 283-284. In this case, the ALJ's credibility assessment is arguably supported by substantial evidence in the record as a whole based upon the multiple factors cited and discussed. However, because the credibility analysis *may* have been infected by the legal error committed by the ALJ in evaluating the medical opinion evidence, and considering the extra caution that is warranted under Sixth Circuit case law when drawing an adverse conclusion based upon a failure to comply with mental health treatment, the undersigned recommends that the ALJ reassess Plaintiff's credibility on remand.

**2. Evaluation of Medical Opinion Evidence**

Plaintiff's main assertion of error is that the ALJ improperly evaluated the medical opinion evidence when he rejected the opinion of her treating psychiatrist, Dr. Baula, that she would miss "about three" days per month of work based upon her impairments or treatment. (Tr. 456). Dr. Baula had treated Plaintiff for about two years at the time of her hearing. The opinions of a treating physician are to be given "controlling" weight if they are well-supported and not inconsistent with other substantial evidence in the record. However, the ALJ determined that Dr. Baula's opinions were not entitled to controlling weight, but only "some" weight, because they were not well-supported, and

8

were inconsistent with other substantial evidence of record. Of note, the ALJ actually found Plaintiff to be *more* limited in two functional areas than did Dr. Baula.

On July 15, 2015, Dr. Baula completed a "Mental Impairment Questionnaire" in which he identified Plaintiff's diagnoses as PTSD, with a history of marijuana abuse, headaches, and irritable bowel syndrome. (Tr. 454). Although the ALJ did not find any severe physical impairments, it is worth pointing out that the ALJ found additional mental impairments than noted by Dr. Baula, including severe bipolar disorder and a panic disorder.

On the same questionnaire, Dr. Baula checked off boxes for a number of "signs and symptoms" including the following: sleep disturbance, emotional lability, delusions or hallucinations, panic attacks, feelings of guilt/worthlessness, suicidal ideation or attempts, social withdrawal or isolation, invasive recollection of a traumatic experience, persistent irrational fears, generalized persistent anxiety, and hostility and irritability. (*Id.*). However, nothing on the "check box" list of symptoms or elsewhere on the form describes the severity or frequency of Plaintiff's symptoms, or the extent to which her symptoms were managed with treatment to a non-disabling level. Instead, under a query asking for clinical findings that demonstrate the severity of Plaintiff's impairment, Dr. Baula wrote only: "Very anxious around people, can have panic attacks." (Tr. 455). The form also includes a list of Plaintiff's medications, and a notation that she has had a "fair response" to treatment, indicating at least some level of effectiveness of treatment, with a "fair" prognosis. (*Id.*) Dr. Baula states rather vaguely that "severe depression or anxiety can worsen pain or other physical symptoms." (*Id.*).

With respect to Plaintiff's functional limitations, Dr. Baula first opined that Plaintiff has no limitations at all in her activities of daily living. (Tr. 456). The ALJ rejected that

9

opinion (which undermines Plaintiff's disability claim), and instead found "mild" limitations in that area. (Tr. 23). Plaintiff reported doing her own housekeeping, laundry, and cooking when her energy permits. She is able to go to stores or banks to get money orders to pay her bills, and can drive when she needs to go somewhere. (*Id.*) She has friends, handles her own personal care, uses Facebook, texts people on her phone, and watches television daily. (*Id.*) However, the ALJ assessed mild limitations based on the record as a whole, which included the opinions of consulting psychologists and Plaintiff's testimony that her friends shop for her because she does not like having to deal with people. (*Id.*) Unsurprisingly, Plaintiff does not appeal the ALJ's determination that she has greater limitations in her activities of daily living than assessed by her treating psychiatrist.

The ALJ also rejected Dr. Baula's opinion that Plaintiff had only "slight" functional limitations in concentration, persistence, or pace, (Tr. 456), finding (again, in Plaintiff's favor) that she has "moderate" limitations in that area. (Tr. 23-24). The finding of "moderate" limitations, as opposed to the only "slight" limitations endorsed by Dr. Baula in concentration, persistence, or pace, was supported by two state agency reviewing consultants who opined that Plaintiff would have moderate limitations, (Tr. 26), and by the report of examining consulting psychologist, Dr. Rosenthal, who opined that Plaintiff "likely would display concentration deficits on complex or multi-step work assignments," but would be able to sustain concentration on simple or repetitive tasks. (Tr. 378; *see also* Tr. 24, 26). The ALJ also referenced Plaintiff's treatment records and her own testimony that she is able to watch television and follow both written and verbal instructions fairly well, while considering her testimony that she quickly lost interest in past work and became easily irritated or anxious. Considering that the ALJ found more

10

significant limitations than endorsed by Dr. Baula in this functional area, Plaintiff also asserts no error in the ALJ's rejection of this aspect of Dr. Baula's opinion.

Next, Dr. Baula opined that Plaintiff has experienced "marked" limitations in "episodes of deterioration or decompensation." (Tr. 456). After explaining that repeated episodes of decompensation are defined under social security limitations as at least three episodes within one year, each lasting at least two weeks in duration, the ALJ found no evidence at all that Plaintiff has experienced any episodes of decompensation of extended duration. (Tr. 23-24). Therefore, the ALJ rejected Dr. Baula's opinion that Plaintiff has such episodes. (Tr. 27). Plaintiff does not contest that finding.

The limited opinions rejected by the ALJ as to which Plaintiff does assert error include Dr. Baula's opinion that Plaintiff has "marked" difficulties in maintaining social functioning, and that either her impairments or treatment would cause her to miss about three days of work per month. (Tr. 456.) Plaintiff specifically focuses on the opinion concerning absenteeism, arguing that the rejection of that limitation by a treating physician constitutes reversible error.

The ALJ explained his rejection of both the social limitation and absenteeism opinions as follows:

> [M]arked social limitations are not support[ed] in that the claimant's record indicates that she does tend to isolate herself but it does not support a conclusion that she would not be able to perform a job with minimal contact with other people. This is evident by the fact that she lives with other people, has friends she communicates with, and presented as cooperative at both the hearing and the consultative examination…. Additionally, part of Dr. Baula's opinion is based on the claimant's own reports of pain from her physical impairments. Since this has already been found to not cause more than minimal functional limitations, Dr. Baula's opinion that relied on such a conclusion finds a lack of support in the record. Furthermore, Dr. Baula concluded that the claimant would miss about three days a month due to her impairments. Again, such a conclusion is not supported by the record and is therefore given little weight.

11

(Tr. 27).

Plaintiff argues that the ALJ committed reversible error by applying less deference to Dr. Baula's opinions on these issues than he did to the three non-treating psychologists' opinions. When an ALJ does not give controlling weight to a treating physician's opinion, he must articulate the weight given to the opinion, and provide "good reasons" for that decision. See *Blakley v. Com'r of Social Security,* 581 F.3d 399, 406 (6th Cir.2009) (additional citations omitted). In general, less weight is given to examining consultants, with the least amount of weight to be given to the opinions of non-examining consultants. See 20 C.F.R. § 416.927(c); *Gayheart v. Com'r of Soc. Sec.*, 710 F.3d 365, 377 (6th Cir. 2013) (holding that the rejection of a treating physician's opinion as inconsistent with the record must be based on something more than only the opinions of nontreating doctors). Here, it is evident from the ALJ's analysis that he did not reject the absenteeism and social impairment limitations based solely on the opinions of non-treating experts, but on Dr. Baula's own failure to fully explain or provide support for his extreme limitations.

Before this Court, Plaintiff contends that "Dr. Baula identified several clinical signs and symptoms" that support his opinions. However, Plaintiff does not specifically identify which "signs and symptoms" that Dr. Baula allegedly relied upon, but instead points only to pages 2-5 of her own Statement of Errors, wherein she generally summarizes the record and highlights pages that she believes are the most favorable to her claim. See generally *White v. Com'r*, 572 F.3d at 284-285 (denying plaintiff's charge of "cherry picking" while noting that plaintiff also was "cherry picking" evidence, and that the ALJ's credibility determination, and finding that symptoms from plaintiff's bipolar illness were not disabling, were supported by substantial evidence and within the

"zone of choice" despite plaintiff's reference to some "bad days"). In a related argument, Plaintiff complains that the ALJ failed to consider that mental health symptoms "naturally wax and wane" over time. (Doc. 8 at 4). She argues that her records do not document "sustained, substantial improvement." (*Id*. at 5). However, the ALJ did not find sustained improvement so much as he simply concluded that Plaintiff's symptoms remained stable with treatment, and were never at a disabling level.

Despite the noted weaknesses of several of Plaintiff's arguments, the undersigned agrees with Plaintiff that the ALJ's recitation to the record is, on the whole, too insubstantial for this Court to uphold the decision.

On the one hand, the undersigned emphasizes that the ALJ's rejection of Dr. Baula's opinions is substantially supported. Plaintiff's broad reference to her own summary of the record (including her discredited testimony) is not sufficient to bolster Dr. Baula's unsupported opinion on absenteeism.[3] Again, in response to a query asking him to provide support for his opinions by describing "the clinical findings including results of mental status examinations which demonstrate the severity of your patient's mental impairment and symptoms," Dr. Baula stated only that Plaintiff is "[v]ery anxious around people" and "can have panic attacks." (Tr. 455). That single statement does not support any disabling level of impairment, much less the specific impairment of excessive absenteeism. Nor is the undersigned convinced by Plaintiff's argument that the ALJ was required to point to evidence that was inconsistent with Dr. Baula's opinion on absenteeism, in the absence of any support for that opinion by Dr. Baula. The ALJ is

---

[3]Some of the cited references appear to be irrelevant to Plaintiff's mental impairments. For example, Plaintiff cites to Tr. 422, which is an endoscopy record dated April 23, 2014. Other records reflect only Plaintiff's mental diagnoses, and in a few cases, suggest her symptoms "are known to respond to treatment." (Tr. 389, 391; *see also* Tr. 405, record dated 3/18/14, stating "Pt. is doing a little better"; Tr. 647, record dated 2/3/15, noting Plaintiff had resumed her medication and was "feeling better").

not required to explain a nullity. A treating physician's opinions are entitled to controlling weight only to the extent that those opinions are well-supported. Dr. Baula's opinions were not well supported, and the ALJ provided "good reasons" for finding those opinions to be entitled to little weight.

Although Plaintiff focuses on Dr. Baula's absenteeism opinion, the undersigned also finds no specific error in the ALJ's rejection of Dr. Baula's opinion that Plaintiff had "marked" functional limitations in her social interactions. Plaintiff testified that she visits stores and banks, has friends who shop for her due to Plaintiff's difficulty dealing with strangers when shopping, uses Facebook, texts her friends throughout the day, and calls family members every other day. (Tr. 23). This testimony, along with the lack of support provided by Dr. Baula, arguably constitutes substantial evidence to support the ALJ's determination of only moderate social limitations.

On the other hand, the exceptionally brief discussion by the ALJ of Plaintiff's most severe symptoms, particularly as documented in her records during the time period when she was treated by Dr. Baula, is sufficiently problematic that reversal is required. While the ALJ was not required to discuss every record, his opinion should have included some additional details to explain his broad conclusions that Plaintiff has responded so well to treatment that her symptoms remained at a non-disabling level through the date of the hearing. Instead, the ALJ referenced hundreds of pages of treatment records in a cursory manner, in most instances without identifying any specific pages that supported his conclusion that Plaintiff's symptoms were stable and non-disabling, and/or that she recovered from significant exacerbations of her symptoms in 2014 and 2015. (*See* Tr. 26, referencing only generally Exhibits 5F, 12F-13F, 14F, 15F, 18F).

14

The ALJ's failure to adequately discuss the medical records that support the non-disability conclusion takes on greater significance when considering his reliance on consulting psychologists, whose opinions all predate the referenced exacerbations of Plaintiff's symptoms. While the conclusion that Dr. Baula's opinions were not well supported and therefore not entitled to controlling weight generally means, by default, that it was not error for the ALJ to rely on the consulting opinions, Plaintiff correctly points out that those consultants did not review most of the material evidence, including substantial treatment notes, Dr. Baula's records and opinions, and psychiatric hospital admission records.

In *Blakley*, 581 F.3d at 409, the Sixth Circuit explained that when an ALJ credits the opinions of non-examining consultants who have failed to review a complete record over the opinions of a treating physician, the ALJ must articulate his reasons for doing so. The facts of *Blakley* required remand because the state non-examining sources did not have the opportunity to review "much of the over 300 pages of medical treatment…by Blakley's treating sources," and the ALJ failed to indicate that he had "at least considered [that] fact before giving greater weight" to the consultants opinions. *Id.* In this case, the ALJ similarly failed to offer any indication that he had considered the timing of the consultants' opinions. *See also Gayheart*, 710 F.3d at 379 (criticizing ALJ's failure to apply the same rigorous scrutiny to consulting opinions as ge did to treating physician's opinions). Not only did the ALJ fail to acknowledge the fact that the consulting physicians lacked access to what appear to have been the most significant mental health treatment records, but the ALJ also failed to discuss those records in any detail himself.

Dr. Rosenthal, the consulting psychologist, performed his clinical examination of Plaintiff on January 9, 2014, nearly two years prior to the ALJ's decision. The non-examining consulting psychologists performed their records review in July 2014. Plaintiff's records reflect exacerbation of her symptoms after the consultants' review, in August 2014, again in June 2015 (a month prior to Dr. Baula's opinions), and a third time in September 2015. On each of those occasions, Plaintiff required Emergency Room treatment and/or admission for severe psychiatric symptoms. Even though these brief hospitalizations did not constitute qualifying periods of decompensation for purposes of listing level severity, the ALJ did not explain the basis for his conclusion that these severe increases in symptoms, which occurred relatively frequently in 2014 and 2015, were not indicative of more disabling functional limitations during that period of time. Instead, the ALJ only briefly referenced the exacerbations of symptoms in the context of assessing Plaintiff's credibility.

Because of the brevity of the ALJ's analysis and apparent *Blakley* error, the undersigned cannot conclude whether substantial evidence exists to support the ALJ's conclusion that Plaintiff's symptoms were not disabling. In August 2014, Plaintiff's Global Assessment of Functioning had deteriorated to "40," suggesting a more disabling level of symptoms, (Tr. 692), even though the same record indicates that a prior GAF had been 55, reflecting more moderate symptoms. (*Compare* Tr. 692 with Tr. 390, assessing GAF of 55 on January 13, 2014). The ALJ did not cite to any specific evidence to support his apparent conclusion that Plaintiff's symptoms had been restored to a non-disabling level after August 2014. The ALJ also did not discuss Plaintiff's report that she was unable to obtain her Xanax in September 2014 due to a lack of insurance coverage. (Tr. 428).

In June 2015, Plaintiff was taken to the ER by her sister, and her GAF was assessed at 37, again suggesting a disabling level of symptoms. Notably, upon her discharge she was only "marginally improved," with a "[g]uarded" prognosis, (Tr. 941). Consistent with that low GAF score and prognosis,[4] Plaintiff returned to the hospital in September 2015. (Tr. 1043). At that time, she reported that she had been without her psychiatric medications for three days due to having been jailed for writing bad checks.

Last, the undersigned notes there are multiple references in the record to possible marijuana, cocaine, and alcohol abuse. This issue may or may not be relevant on remand in this case, as the ALJ's opinion does not list drug or alcohol abuse as a severe disorder at Step 2, and does not discuss the issue other than a brief reference in the credibility determination. On remand, the ALJ may (but is not required to) explore this issue further. To the extent that the issue may prove relevant, applicable regulations require an initial determination of whether a claimant suffers from a disability that *includes* drug or alcohol abuse, before proceeding, if necessary, to a separate and distinct determination of whether the substance abuse is a "contributing factor to the determination of a disability." 20 C.F.R. § 416.935.

### III. Conclusion and Recommendation

The Commissioner's decision in this case requires reversal under *Blakley v. Commissioner of Social Security*, and because the ALJ failed to adequately explain the basis for his conclusion that Plaintiff's symptoms remained at a non-disabling level throughout the entire alleged disability period, as more specifically discussed above.

---

[4] The undersigned recognizes that GAF scores have no "direct correlation to the severity requirements [of the] mental disorders listings." 65 Fed. Reg. 50745, 50764-65 (2000). Nevertheless, they can be relevant in that they provide some indication of Plaintiff's level of functioning on specific dates.

17

When substantial evidence supports a finding, a court will affirm even if substantial evidence also exists to support a contrary finding. *See Felisky v. Bowen*, 35 F.3d at 1035.  Here, however, while substantial evidence could be found to uphold the specific rejection of Dr. Baula's opinions and the adverse credibility finding, those issues should be re-examined on remand because the ALJ's overall analysis may have been impacted by the identified reversible errors, and it is possible that substantial evidence could be found to support contrary findings.

In *Faucher v. Sec'y of Health and Human Servs.,* 17 F.3d 171, 176 (6th Cir.1994), the Sixth Circuit explained that a trial court "can reverse the decision and immediately award benefits *only* if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits" (emphasis added). In general, an award of benefits should be made only if proof of disability is strong and opposing evidence is lacking, or where proof of disability is "overwhelming." *Id.* The Sixth Circuit reversed the immediate award of benefits made by the trial court in *Faucher* because of "conflicting evidence in regard to the severity of plaintiff's emotional impairments." *Id.*  For similar reasons, remand and not reversal for an outright award of benefits is recommended in this case.

Accordingly, **IT IS RECOMMENDED THAT** Defendant's decision be **REVERSED** as NOT supported by substantial evidence, and **REMANDED** for further development of the record under sentence four, with this case to be **CLOSED.**

                                               */s Stephanie K. Bowman*
                                               Stephanie K. Bowman
                                               United States Magistrate Judge

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | |
|---|---|
| CARLI D. KING, | Case No. 1:17-cv-1107 |
| Plaintiff, | Barrett, J. |
| | Bowman, M.J. |
| v. | |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

**NOTICE**

Pursuant to Fed. R. Civ. P 72(b), any party may serve and file specific, written objections to this Report and Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).